Christopher M. Burke (State Bar No. 214799)
Hal D. Cunningham (State Bar No. 243048)
SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
cburke@scott-scott.com
hcunningham@scott-scott.com

Mark N. Todzo (State Bar No. 168389)
Victoria Hartanto (State Bar No. 259833)
LEXINGTON LAW GROUP
503 Divisadero Street
San Francisco, CA 94117-2212
Telephone:  (415) 913-7800
Facsimile:  (415) 759-4112
mtodzo@lexlawgroup.com
vhartanto@lexlawgroup.com

Attorneys for Plaintiffs DESIREE
STEPHENSON, MARNI HABER,
and KARVA TAM

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – OAKLAND BRANCH

| | |
|---|---|
| DESIREE STEPHENSON, MARNI HABER, and KARVA TAM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> NEUTROGENA CORPORATION, <br><br> Defendant. | No. C 12-00426 PJH <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT** <br><br> Hearing Date:     Feb. 20, 2012 <br> Hearing Time:     9:00 a.m. <br> Judge:   Hon. Phyllis J. Hamilton |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

    I.      PROCEDURAL AND FACTUAL BACKGROUND ........................................... 2

    II.     THE PROPOSED SETTLEMENT. ........................................................................... 4

          A.     Neutrogena Must Change Its Business Practices
                So As To Be Truthful In Labeling And Packaging Its Products ................ 4

          B.     Neutrogena Must Contribute Substantial Sums
                To A Claim Fund To Compensate Those Persons Harmed
                By Its Allegedly Deceptive Labeling And Marketing Practice .................. 4

          C.     The Parties Will Stipulate To Class Certification
                For Settlement Purposes ................................................................................. 6

          D.     Neutrogena Will Pay A Portion Of Plaintiffs'
                Reasonable Attorneys' Fees And Litigation Costs,
                And Service Awards To The Plaintiffs ........................................................ 6

ARGUMENT ................................................................................................................... 7

    I.      THE COURT SHOULD GRANT PRELIMINARY APPROVAL
         OF THE SETTLEMENT ................................................................................... 7

          A.     The Applicable Legal Standard ................................................................... 7

          B.     This Settlement Is The Product of Serious, Informed,
                And Arm's-Length Negotiations ................................................................. 8

          C.     The Settlement Has No "Obvious Deficiencies"
                 And Treats No Members Of The Class Preferentially ............................... 9

          D.     The Settlement Falls Within The Range Of Possible Approval ............... 10

    II.     PROVISIONAL CERTIFICATION OF THE SETTLEMENT
         CLASS IS APPROPRIATE. ............................................................................ 11

          A.     The Criteria For Class Certification Under Rule 23(a) Are Satisfied ....... 12

                 1.     Joinder Of All Members Is Impracticable ................................... 13

                 2.     Common Issues Of Law And Fact Exist ..................................... 13

                 3.     The Named Plaintiffs' Claims Are Typical Of Class Claims ........ 14

                 4.     The Named Plaintiffs And Their Counsel Adequately
                     Represent The Proposed Class…………………………………...15

          B.     The Proposed Settlement Class Meets The Requirements
                 Of Rule 23(b)(2) and 23(b)(3)…………………................................. 15

i                                    C 12-00426 PJH

III.     THE PROPOSED CLASS NOTICE SATISFIES THE
REQUIREMENTS OF DUE PROCESS .............................................................. 18

        A.      The Method Of Notice Proposed Is Appropriate ..................................... 18

        B.      The Contents Of The Proposed Notice Are Adequate ............................. 18

IV.     SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE ........... 19

CONCLUSION ...................................................................................................... 20

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

*Alberto v. GMRI, Inc.,*
    252 F.R.D. 652 (E.D. Cal. 2008) ........................................................... 7, 9, 11, 17

*Alvarado Partners, L.P. v. Mehta,*
    723 F. Supp. 540 (D.C. Colo. 1989) ................................................................ 12

*Bjustrom v. Trust One Mgmt. Corp.,*
    199 F.R.D. 346 (W.D. Wash. 2003) ................................................................ 14

*Blanchard v. Bergeron,*
    489 U.S. 87 (1989) ....................................................................................... 11

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 2007) ......................................................................... 13

*Browning v. Yahoo! Inc.,*
    2006 WL 3826714 (N.D. Cal. Dec. 27, 2006) ................................................ 12

*Bruno v. Eckhart Corp.,*
    280 F.R.D. 540 (C.D. Cal. 2012) .............................................................. 10, 17

*Chavez v. Blue Sky Natural Beverages Co.,*
    268 F.R.D. 365 (N.D. Cal. 2010) .............................................................. 14, 15

*Churchill Vill., LLC v. General Elec.,*
    361 F.3d 566 (9th Cir. 2004) ......................................................................... 19

*Delarosa v. Boiron, Inc.,*
    275 F.R.D. 582 (C.D. Cal. 2011) ................................................... 13, 14, 15, 17

*Dukes v. Wal-Mart, Inc.,*
    509 F.3d (9th Cir. 2007) .......................................................................... 13, 14, 15

*Hanlon v. Chrysler Corp.,*
    150 F. 3d 1011 (9th Cir. 1998) ..................................................... 7, 14, 16, 17

*Immigrant Assistance Project of Los Angeles County Fed'n of Labor v. I.N.S.,*
    306 F.3d 842 (9th Cir. 2002) ......................................................................... 13

*In Re Enron Sec. & ERISA Litig.,*
    2003 WL 22494413 (S.D. Tex. July 24, 2003) ............................................... 18

*In Re Mego Fin. Corp. Sec. Litig.,*
    213 F. 3d 454 (9th Cir. 2000) ..................................................................... 7, 8

*In Re Pom Wonderful LLC Mktg. & Sales Practices Litig.,*
    2012 WL 4490860 (C.D. Cal. Sept. 28, 2012) ............................................... 17

*In Re Portal Software, Inc. Sec. Litig.,*
    2007 WL 1991529 (N.D. Cal. June 30, 2007) ............................................... 18

*In Re Wells Fargo Loan Processor Overtime Pay Litig.,*
    2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) ................................................. 19

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

*Jordan v. County of Los Angeles,*
    669 F.2d 1311 (9th Cir. 1982) ................................................................. 13, 14

*Kowalsky v. Hewlett-Packard Co.,*
    2012 WL 892427 (N.D. Cal. Mar. 14, 2012) ...................................... 10

*Lozano v. AT & T Wireless Servs., Inc.,*
    504 F.3d 718 (9th Cir. 2007) ................................................................ 14

*M. Berenson Co. v. Fanueil Hall Marketplace,*
    671 F. Supp. 819 (D. Mass. 1987) ....................................................... 8

*Mazza v. American Honda Motor Co.,*
    666 F.3d 581 (9th Cir. 2012)……………………………………………10, 17

*O'Donovan v. CashCall, Inc.,*
    278 F.R.D. 479 (N.D. Cal. 2011) ................................................ 14, 15, 16

*Rodriguez v. West Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ................................................................ 19

*Vasquez v. Coast Valley Roofing, Inc.,*
    2009 WL 3857428 (E.D. Cal. Nov. 17, 2009) ................................. 8

*Williams v. Costco Wholesale Corp.,*
    2010 WL 761122 (S.D. Cal. Mar. 4, 2010) ................................ 7, 8, 9

*Wright v. Lucas Enters.,*
    259 F.R.D. 468 (E.D. Cal. 2009) ......................................................... 7

*Zeisel v. Diamond Foods, Inc.,*
    WL 2221113 (N.D. Cal. June 7, 2011) ....................................... 13, 15

## STATUTES & REGULATIONS

Fed. R. Civ. P. 23(a)(1) ..................................................................... 13

Fed. R. Civ. P. 23(a)(3) ..................................................................... 14

Fed. R. Civ. P. 23(c)(2)(B) ................................................................ 18

## OTHER AUTHORITIES

Committee Notes to 2003 Amendments to Fed. R. Civ. P. 23(h) ................................. 11

Federal Judicial Center, *Manual for Complex Litigation,*
    (4th ed. 2004) ................................................................. 12, 18

March 30, 2012 Order Granting Preliminary Approval of Proposed Class Action Settlement in
    *Astiana v. Ben & Jerry's Homemade, Inc.*, Case No. 10 Civ. 4387-PJH………………..17

The Rutter Group, *California Practice Guide: Federal Civil Procedure Before Trial,*
    (2012) ................................................................. 12

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

William B. Rubenstein et al., *Newberg on Class Actions*,
    (4th ed. 2002) ............................................................................................................ 7

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

1     **NOTICE OF MOTION AND MOTION**

2     **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3 **PLEASE TAKE NOTICE THAT** on February 20, 2012 at 9:00 a.m., or as soon thereafter as this

4 matter may be heard by and before the Honorable Phyllis J. Hamilton, United States District

5 Judge, at the United States Courthouse, Oakland Courthouse, Courtroom 3, 3rd Floor, 1301 Clay

6 Street, Oakland, California 94612, Plaintiffs Desiree Stephenson, Marni Haber, and Karva Tam

7 ("Plaintiffs"), on behalf of the proposed Class (defined herein), respectfully apply to this Court for

8 entry of an order:  (i) granting preliminary approval of the proposed settlement set forth in the

9 class action Stipulation of Settlement (attached as Exhibit 1 to the accompanying Declaration of

10 Mark N. Todzo ("Todzo Decl.")); (ii) conditionally certifying the Class for purposes of such

11 settlement by way of a [Proposed] Order Granting Preliminary Approval (submitted herewith);

12 (iii) approving Plaintiffs' selection of Class Counsel; (iv) approving the proposed notice plan;

13 and (v) setting a hearing date for final approval thereof.

14     This motion is based on this Notice of Motion and Motion, the attached Memorandum of

15 Points and Authorities, the other papers on file in this action, and such other submissions or

16 arguments that may be presented before or at the hearing on this motion.

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 10-CV-02500 SBA

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiffs Desiree Stephenson, Marni Haber, and Karva Tam ("Plaintiffs") on behalf of the proposed Class (defined herein), respectfully apply to this Court for entry of an order (i) granting preliminary approval of the proposed settlement set forth in the class action Stipulation of Settlement (the "Settlement Agreement") (Todzo Decl. Exh. 1); (ii) conditionally certifying the Class for purposes of such settlement by way of a [Proposed] Order Granting Preliminary Approval (the "Preliminary Approval Order") (submitted herewith); (iii) approving Plaintiffs' selection of Class Counsel; (iv) approving the proposed notice plan; and (v) setting a hearing date for final approval thereof (the "Final Approval Hearing").

The proposed settlement resolves the claims in the Second Amended Complaint in the above captioned case, which concerns Neutrogena's allegedly false and misleading marketing and advertising of its Neutrogena Naturals line of cleansers and moisturizers as "natural" products that contain no petrochemicals. The lawsuit alleges that six of these products are, in fact, not made of natural ingredients and do, in fact, contain petrochemicals.[1] The settlement remedies the concerns expressed in the lawsuit Plaintiffs filed on behalf of all purchasers of these products, who paid a premium for them over comparable products that did not purport to be natural or free of petrochemicals.

The proposed settlement is fair, reasonable, and adequate, falling well within the range of class action settlements that merit preliminary approval. First and foremost, this settlement will prevent future violations by requiring Neutrogena to change its product labeling to accurately reflect the contents inside. In addition, Neutrogena will pay a total of $1,300,000 into a settlement fund for the benefit of Class members. Neutrogena will also not oppose an application by Plaintiffs to this Court for a partial reimbursement of Plaintiffs' attorneys' fees and costs, not to

---

[1] The seventh product, the Neutrogena Naturals Lip Balm, is made from wholly natural ingredients, and thus is not at issue in the present suit.

exceed a total of $500,000. In turn, Neutrogena will receive a release of all claims relating to the challenged marketing and advertising practices. These settlement stipulations were reached after rigorous, informed negotiations between the parties and their experienced class action counsel, in a process that was overseen by a seasoned, neutral mediator. Because this proposed settlement is fair to all parties and because it adequately addresses the grievances of Plaintiffs and the Class, it should be preliminarily approved.

## STATEMENT OF FACTS

### I.     PROCEDURAL AND FACTUAL BACKGROUND

Defendant Neutrogena is a manufacturer, seller, and distributor of a line of skincare products known as Neutrogena Naturals (the "Products"), which are sold to consumers across the nation, including in California. Plaintiffs allege that they were induced to purchase the Products by Neutrogena's representations and claims that the Products are natural; in fact, Plaintiffs allege, the Products contain various artificial and synthetic ingredients. Plaintiff further allege that certain statements made by Neutrogena in marketing and advertising the Products, including that they contain "[n]o harsh chemical sulfates, parabens, petrochemicals, dyes, phthalates," are false and misleading. Plaintiffs seek to represent a class of persons throughout the United States who, like themselves, purchased the Products at a price premium, erroneously believing them to be natural based on Neutrogena's representations. The primary objectives of Plaintiffs' case are to: (1) require Neutrogena to halt its allegedly deceptive marketing and advertising practices (thereby protecting consumers in the future); and (2) to disgorge the premiums it allegedly obtained as a result of its misrepresentations (thereby compensating consumers for past wrongdoings).

On January 26, 2012, Plaintiff Desiree Stephenson filed a Complaint against Neutrogena in the U.S. District Court for the Northern District of California. The Complaint alleged (1) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; and California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; and (2) breach of express warranty with regard to four Neutrogena Naturals "cleanser" products: the

Purifying Facial Cleanser, Purifying Pore Scrub, Face and Body Bar, and Fresh Cleansing + Makeup Remover. On March 28, 2012, Plaintiff Stephenson filed a First Amended Complaint alleging the same causes of action, but adding two additional Neutrogena Naturals "moisturizer" products: the Multi-Vitamin Nourishing Night Cream and Multi-Vitamin Nourishing Moisturizer.

On July 27, 2012, the Court granted in part and denied in part Neutrogena's Motion to Dismiss, dismissing claims as to the five Products that Plaintiff Stephenson did not purchase and striking Plaintiff Stephenson's prayer for injunctive relief insofar as she did not adequately allege a risk of future injury. However, the Court gave Plaintiff Stephenson leave to file an amended complaint to add allegations that she intends to purchase Neutrogena Naturals Products in the future if the alleged misrepresentations are corrected. On October 26, 2012, Plaintiffs filed a Second Amended Complaint adding these allegations, and also adding Marni Haber and Karva Tam – two California residents who purchased the Products under the misguided belief that they were natural and contained no petrochemicals – as named Plaintiffs and putative Class representatives. Neutrogena filed an Answer to that Second Amended Complaint on November 9, 2012.

Even prior to the Court's July 27, 2012 Order on Neutrogena's Motion to Dismiss, the parties had begun discussions regarding the underlying factual allegations and potential settlement options. On August 7, 2012, the parties participated in a settlement mediation with the Honorable Edward A. Panelli (Retired). During the course of the mediation session and thereafter, Neutrogena provided Plaintiffs with vital information pertinent to the legitimacy and scope of Plaintiffs' claims, including sworn statements to Plaintiffs confirming the composition and labeling of the Neutrogena Naturals products and the number of products sold to date. These discussions and the mediation resulted in the settlement terms discussed below. Although Neutrogena has numerous defenses to the underlying allegations and the basis for certifying the Class, in recognition of the risks of the litigation and the certain, significant costs of defending it, Neutrogena agreed to a settlement that will provide valuable benefits to the settlement Class.

## II.    THE PROPOSED SETTLEMENT

In exchange for a release of all claims, Neutrogena has agreed to undertake several important remedial measures.  First, to remedy the alleged misrepresentations on the Product labels, Neutrogena has agreed to change its Product labeling.  Second, Neutrogena will contribute $1.3 million into an independently-administered Class fund, which will be used chiefly to compensate users of the Products who were misled by Neutrogena's past labeling practices, as well as to disseminate notice to the Class such that affected persons may avail themselves of this remedial monetary payment.  Third, Neutrogena will pay for a portion of Plaintiffs' reasonable attorneys' fees and costs, which shall not exceed $500,000.

### A.    Neutrogena Must Change Its Business Practices So As To Be Truthful In Labeling And Packaging Its Products.

In settlement of Plaintiffs' and the Class's claims, Neutrogena has agreed to prospectively change the labeling and, where applicable, packaging of all Products.  In order to cure any misperception that the Products are all-natural, Neutrogena will include a statement regarding the exact percentage of the Product that is naturally derived on the front of the labels and/or packages of each Product.  In addition, Neutrogena will remove the term "petrochemicals" from the statement "No harsh chemical sulfates, parabens, petrochemicals, dyes, phthalates" on the Product labels in order to cure the alleged misrepresentation resulting from Plaintiffs' contention that the Products contain petrochemical residues.  Todzo Decl. Exh. 1, ¶ III.A; *see also id.*, Exh. 1-H.

### B.    Neutrogena Must Contribute Substantial Sums To A Claim Fund To Compensate Those Persons Harmed By Its Allegedly Deceptive Labeling And Marketing Practices.

The Settlement Agreement also provides that Neutrogena will pay $1.3 million to establish a fund (the "Claim Fund") for payment of Class member claims, and for the payment of certain notice and administration costs and expenses.  Todzo Decl. Exh. 1, ¶ III.B.  The Claim Fund will be administered by an independent, qualified company (the "Claim Administrator"), which shall approve claims submitted by affected Class members in accordance with a specified procedure and subject to verification by the parties.  *Id.*, Exh. 1, ¶¶ III.B.4, III.B.6, III.B.7; *see also id.*, Exh. 1-A.  Class members who submit valid claims are eligible to recover up to $10 per member ($1 for

each of the cleanser Products purchased (*i.e.*, Neutrogena Naturals Purifying Facial Cleanser,

Purifying Pore Scrub, Face and Body Bar, Fresh Cleansing + Makeup Remover) and $2 for each

of the moisturizer Products purchased (*i.e.*, Multi-Vitamin Nourishing Moisturizer, Multi-Vitamin

Nourishing Night Cream)).[2] Todzo Decl. Exh. 1, ¶ III.B.3.

Notice to the Class will be provided shortly after the Court's preliminary approval and will

be achieved by several means, which Plaintiffs' counsel and Neutrogena have selected as the most

effective means of reaching the proposed Class members. *Id.*, Exh. 1, ¶ VI.B. First, Neutrogena

will provide notice via e-mail or U.S mail to all Class members for whom it has contact

information, and will post relevant links on its Neutrogena Naturals website.[3] *Id.*, Exh, 1-D, ¶¶ 1,

8. Second, the Claim Administrator will publish a notice in *People* and *US Weekly* magazines and

in the *San Francisco Chronicle* newspaper. *Id.*, Exh, 1-D, ¶ 4. Third, press releases will be sent

to the PR Newswire service and to pertinent weblogs (a.k.a. "blogs") covering beauty supplies,

cosmetics, and skin care issues. *Id.*, Exh, 1-D, ¶ 5. Fourth, internet and mobile phone

advertisements targeting potential Class members will be run on various media services. *Id.*, Exh,

1-D, ¶¶ 6-7. All notices will direct Class members to a settlement website and toll-free telephone

support system, which are to be set up by the Claim Administrator using Class funds. *Id.*, Exh, 1-

D, ¶¶ 2-3. The website will include a more detailed notice fully explaining the terms of the

settlement and all attendant Class member rights both in English and Spanish.[4] *Id.*, Exh. 1, ¶

VI.B.1; *see also id.*, Ex. 1-C & 1-E. No more than $550,000 of the Claim Fund may be used to

reimburse those costs reasonably and actually incurred by the Claim Administrator in connection

with providing notice and administering claims. *Id.*, Exh. 1, ¶ III.B.2(a).

---

[2] The discrepancy in compensation as between purchasers of the cleanser and moisturizer Products ($1 versus $2) simply reflects the fact that the moisturizer Products are more expensive.

[3] Counsel for Plaintiffs will post pertinent links on their own websites at or around the same time. *Id.*, Exh. 1, ¶ VI.B.

[4] This detailed Class notice will also be available to Class members via U.S. Mail, upon request. *Id.*, Exh. 1, ¶ VI.B.2.

The Settlement Agreement allows no possibility of any Claim Fund monies reverting to Neutrogena. If the amounts ultimately paid on claims and expenses do not equal or exceed $1.3 million, the remainder of the Claim Fund shall be distributed to an appropriate non-profit or civic entity(ies) for use in a manner that the Court determines to be an appropriate vehicle to provide the next best use of compensation to Class members. *Id.*, Exh. 1, ¶ III.B.2(c).

## C. The Parties Will Stipulate To Class Certification For Settlement Purposes.

Plaintiffs seek certification pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), and Neutrogena has agreed to stipulate to class certification solely for purposes of achieving settlement. Todzo Decl. Exh. 1, ¶ V. The putative settlement Class will comprise all persons or entities in the United States who purchased Neutrogena Naturals Purifying Facial Cleanser, Purifying Pore Scrub, Face and Body Bar, Fresh Cleansing + Makeup Remover, Multi-Vitamin Nourishing Moisturizer, or Multi-Vitamin Nourishing Night Cream from January 1, 2011 – *i.e.*, the approximate date when the Product line was initially launched – to the date notice to the Class is to be published. *Id.*

Class members will have until forty-five (45) days prior to the Final Approval Hearing to file any objections to the proposed settlement, to seek exclusions from the Class, or to file notices of intent to appear at the hearing. Todzo Decl. Exh. 1, ¶ VI.B.3. The parties will monitor and track those Class members seeking exclusion or objecting to the proposed settlement. *Id.*, Exh. 1, ¶ VI.D.

## D. Neutrogena Will Pay A Portion Of Plaintiffs' Reasonable Attorneys' Fees And Litigation Costs, And Service Awards To The Plaintiffs.

Pursuant to the Settlement Agreement and following the Court's preliminary approval of the Stipulation of Settlement, Class Counsel will submit an application to the Court for an award of attorneys' fees and expenses not to exceed $500,000, subject to the Court's approval. Todzo Decl. Exh. 1, ¶ VIII.A.2. Neutrogena will not oppose this application. *Id.* Any award of fees will in no way affect the amount disbursed as part of the Claim Fund. Todzo Decl. Exh. 1, ¶ VIII.A.1.

The Claim Fund disbursements may include a modest award to compensate the three named Plaintiffs for their service as Class representatives, the application for which Neutrogena agrees not to oppose. *Id.*, Ex. 1, ¶ VIII.B. The amount of these awards is not to exceed $1,000 for Plaintiff Stephenson and $500 each for Plaintiffs Haber and Tam. *Id.*

## ARGUMENT

### I. THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT.

The proposed settlement is fair and reasonable. The settlement provides substantial benefits to the Class by requiring changes in Neutrogena's labeling and marketing practices, and by securing just compensation for Product purchases already made. The settlement accomplishes this while avoiding both the uncertainty and the delay that would be associated with further litigation. It represents a fair compromise of the parties' respective positions in the litigation, and enables each party to end the litigation, thus avoiding its costs and risks. Finally, the settlement was reached through arm's length negotiations as part of a supervised mediation process. Plaintiffs' counsel, which has significant experience in litigating class actions, supports the resulting settlement as fair and as providing reasonable relief to the members of the Class.

### A. The Applicable Legal Standard.

A proposed settlement may be approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

Given that the full fairness and adequacy of a class settlement can only be assessed at the final approval hearing, at the preliminary approval stage the Court "need only review the parties' proposed settlement to determine whether it is within the permissible 'range of possible judicial approval' and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate." *Williams v. Costco Wholesale Corp.*, 2010 WL 761122, at *5 (S.D. Cal. Mar. 4, 2010) (citing WILLIAM B. RUBENSTEIN ET AL., NEWBERG ON CLASS ACTIONS § 11:25 (4th ed. 2002) (citations omitted)); *see also Wright v. Lucas Enters.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009); *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008).

Preliminary approval of a settlement and notice to the proposed class is appropriate if "[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval...." *Williams*, 2010 WL 761122, at *5 (brackets and ellipses in original) (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 2009 WL 3857428, at *7 (E.D. Cal. Nov. 17, 2009)). This settlement meets all of the above criteria.

### B. This Settlement Is The Product of Serious, Informed, And Arm's-Length Negotiations.

Arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of fair settlements. *See M. Berenson Co. v. Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where ... a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair.").

The parties' negotiations were adversarial and at arm's length. *See* Todzo Decl. ¶ 2. Counsel for Plaintiffs have considerable experience in class action litigation in general, and with the legal and factual issues of this case in particular. *See id.*, ¶¶ 3-4, 11-13. Furthermore, although no formal discovery was conducted, Neutrogena did provide Plaintiffs with vital information pertaining to the legitimacy and scope of Plaintiffs' claims, including sworn statements to Plaintiffs confirming information regarding Neutrogena's Naturals products and the number of Naturals products sold to date. *See id.* ¶ 4; *see also, e.g.*, *In re Mego*, 213 F.3d at 459 ("[I]n the context of class actions settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.") (citation omitted). This sharing of information ensured sophisticated and meaningful settlement negotiations, which were conducted over several months, including a face-to-face meeting with members of Neutrogena's internal legal team. *See* Todzo Decl. ¶ 2. In short, the parties were fully informed of all relevant facts at the time a settlement was reached.

### C. The Settlement Has No "Obvious Deficiencies" And Treats No Members Of The Class Preferentially.

The settlement is fair in light of the status of the litigation, and treats Class members equitably. All potential future purchasers of the Products will receive the benefit of the injunctive relief provided for in the settlement, and all Class members who purchased the Products dating back to January 2011 will receive the benefit of the monetary relief provided for therein.[5] The settlement's notice provisions, which are detailed and comprehensive and which will be administered by a qualified third party, will help to ensure that such purchasers will actually recoup their monetary losses. *See Alberto*, 252 F.R.D. at 666-67 (satisfactory notice provisions weigh in favor of preliminary approval). Moreover, the substantial injunctive and monetary relief secured by the settlement is quite fair in light of the significant hurdles faced by Plaintiffs and the Class going forward: Neutrogena vigorously disputes that the Class would be able to prove liability, certify a class, or be entitled to injunctive relief or monetary damages.

Although Plaintiffs believe that they could establish liability were the case to go to trial, this is hardly an easy win. The term "natural" as used on cosmetic products has not been conclusively defined by state or federal regulatory agencies. In the absence of agency guidance, Plaintiffs would face the hurdle of establishing that Neutrogena's use of the term in labeling and marketing its Products is deceptive to a reasonable consumer based on more equivocal conceptions of the term. Notably, other plaintiffs have failed in bringing similar lawsuits alleging deception by so-called "natural" products.

Furthermore, Plaintiffs note that this Court already granted in part Neutrogena's motion to dismiss on Article III standing grounds, which significantly pared down the operative claims in the case. Although Plaintiffs believe that they have remedied these infirmities in the allegations of the Second Amended Complaint, the sufficiency of these allegations has yet to be challenged by

---

[5] The service awards to the three Plaintiff Class representatives, which are not to exceed a total of $2,000, are far less than service awards approved by other courts. *See, e.g.*, *Williams*, 2010 WL 761122, at *2, *6 ($5,000 service award to single named plaintiff "does not appear facially unreasonable"); *see also* Todzo Decl. ¶ 10 (detailing the services provided).

Neutrogena or upheld by this Court. These issues thus could rise up again at a later stage.

Lastly, Plaintiffs recognize that there is a lurking legal ambiguity regarding whether they will be able to represent a nationwide class in the wake of the Ninth Circuit's ruling in *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 589-94 (9th Cir. 2012) (holding, under the facts of that case, that "common issues of law do not predominate because California's consumer protection statutes may not be applied to a nationwide class with members in 44 jurisdictions"). There is a split of authority among district courts as to the scope of this ruling. *Compare Bruno v. Eckhart Corp.*, 280 F.R.D. 540 (C.D. Cal. 2012) (refusing to decertify class in light of *Mazza*), *with Kowalsky v. Hewlett-Packard Co.*, 2012 WL 892427 (N.D. Cal. Mar. 14, 2012) (applying *Mazza* in denying motion for class certification). Plaintiffs are largely confident that this Court can and would certify a nationwide settlement Class under the facts of the case at bar, but acknowledge the discrete risk that the Court would not.

By settling now, Class members secure meaningful monetary compensation, plus the certainty of knowing that Neutrogena's offending labeling and marketing practices will cease hereinafter. These benefits will accrue equally to all Class members. Given the vagaries of pressing forward with litigation, the settlement has no "obvious deficiencies" and treats no Class members unfairly. *See* Todzo Decl. ¶¶ 5-6, 8-9.

### D. The Settlement Falls Within The Range Of Possible Approval.

The substance of the settlement clearly falls within the bounds of reasonableness. Plaintiffs have secured a commitment from Neutrogena to implement injunctive relief that fully cures the alleged misrepresentations at the heart of this case. Additionally, the $1.3 million class settlement fund represents a substantial portion of the damages sought. The monetary provisions of the settlement were based on a damages model that looked to the actual premiums paid by consumers on all Products sold nationwide over and above the prices paid by consumers for seemingly comparable cleanser and moisturizer products that do not claim to be "natural." *See* Todzo Decl. ¶ 7. However, one problem with this model is the difficulty of assessing what baseline products are to be deemed "comparable," given differences in ingredients, function, and

so forth – this issue, no doubt, would form a central dispute in any damages calculation at trial. Looking past these ambiguities, however, the $1.3 million monetary recovery represents a substantial percentage of what Plaintiffs believe to be their best case scenario for recovery at trial. The injunctive relief component of the settlement – which cannot be readily monetized, but which has tremendous value to consumers – only enhances the legitimacy of this recovery.

The reasonableness of the settlement is further underscored by the fact that it was reached only after participation in formal mediation before a qualified, neutral mediator. *See Alberto*, 252 F.R.D. at 666 (brokering of settlement by qualified mediator weighs in favor of preliminary approval of settlement by court). Here, the parties employed the Honorable Edward A. Panelli, a former Justice of the California Supreme Court with decades of experience in the resolution of complex business litigation, including class actions and products liability cases, as a mediator. *See* Todzo Decl. ¶ 2 & Exh. 2.

Moreover, the fee award sought by Plaintiffs, which will be subject to further review by this Court at the final settlement approval stage, is well within the range of possible approval. *See* Todzo Decl. ¶ 11. This is especially true given the centrality of the injunctive relief component to the overall settlement. *See generally* Committee Notes to 2003 Amendments to Fed. R. Civ. P. 23(h) ("[I]t is important to recognize that in some class actions the monetary relief obtained is not the sole determinant of an appropriate attorney fees award.") (citing *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989) (cautioning against an "undesirable emphasis" on "the importance of the recovery of damages in civil rights litigation" that might "shortchange efforts to seek effective injunctive or declaratory relief")).

For all of these reasons, preliminary approval of the settlement should be granted.

## II. PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.

For settlement purposes only, Plaintiffs request that the Court provisionally certify the settlement Class proposed below pursuant to Rule 23 of the Federal Rules of Civil Procedure.

Provisional Class certification is appropriate in part because Neutrogena consents to Class

certification solely in the context of this settlement.[6] *See* Todzo Decl. Exh. 1, ¶ V. *See also*

*generally* The Rutter Group, *California Practice Guide: Federal Civil Procedure Before Trial*

(2012), Ch. 10-C at § 10:787 (noting that courts generally permit parties to stipulate that a defined

class be conditionally certified for settlement purposes because it facilitates settlement).

Because the parties have reached agreement regarding Class certification in the context of

this settlement, the Court may enter an order provisionally certifying the Class for settlement

purposes. *See, e.g.*, *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 546 (D.C. Colo. 1989)

(holding that conditional class certification for settlement purposes may be ordered in appropriate

cases to foster such benefits as early settlement and reduced attorneys fees and costs). This will

allow notice of the proposed settlement to issue, so Class members can be informed of the

existence and terms of the proposed settlement, of their right to be heard on its fairness, of their

right to opt out, and of the date, time and place of the fairness hearing. *See* Federal Judicial

Center, *Manual for Complex Litigation* (4th ed. 2004) at §§ 21.632, 21.633.

Plaintiffs seek certification of a settlement Class defined as follows:

> All persons or entities in the United States who purchased
> Neutrogena Naturals Purifying Facial Cleanser, Purifying Pore
> Scrub, Face and Body Bar, Fresh Cleansing + Makeup Remover,
> Multi-Vitamin Nourishing Moisturizer, or Multi-Vitamin
> Nourishing Night Cream from January 1, 2011, to the date notice
> to the Class is to be published

### A. The Criteria For Class Certification Under Rule 23(a) Are Satisfied.

To merit class certification under Rule 23(a), Plaintiffs must show that: (1) the class is so

numerous that joinder is impracticable; (2) questions of law or fact are common to the class;

(3) the claims of the representative Plaintiffs are typical of the claims of the class; and (4) the class

---

[6] Neutrogena's agreement to certification of a tentative settlement Class "is conditional and without prejudice to [its] rights to later oppose class certification for trial purposes if the proposed settlement is terminated or not finally approved." *Browning v. Yahoo! Inc.*, 2006 WL 3826714, at *4 (N.D. Cal. Dec. 27, 2006).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

representatives will fairly and adequately protect the interests of the class.  Each of these criteria is met here.

### 1.  Joinder Of All Members Is Impracticable.

A class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Often, a large number of class members by itself establishes the impracticability of joining them as plaintiffs.  *See Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).  Impracticability does not mean impossibility.  *See, e.g.*, *Immigrant Assistance Project of Los Angeles County Fed'n of Labor v. I.N.S.*, 306 F.3d 842, 869 (9th Cir. 2002) (noting that classes numbering 39, 64, and 71 met numerosity criterion); *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 587 (C.D. Cal. 2011) ("[A]s a general rule, classes of forty or more are considered sufficiently numerous.") (citation omitted).

Extrapolating from sales information provided by Neutrogena in settlement discussions, the number of persons who purchased the Products at issue is in the thousands.  Because joinder of all of these individuals is impractical, if not entirely impossible, the numerosity requirement is satisfied.

### 2.  Common Issues Of Law And Fact Exist.

This test for common questions of law and fact is "qualitative rather than quantitative – one significant issue common to the class may be sufficient to warrant certification."  *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007).  Here, "the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable."  *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).  Neutrogena utilizes advertisements and packaging that include uniform representations that the products are "natural" and contain no petrochemicals, which are allegedly false and misleading and violate the UCL and CLRA.  These representations misled Plaintiffs and the other members of the Class, and Neutrogena breached uniform warranties that were made to Plaintiffs and the other members of the Class.  Thus, the commonality requirement is satisfied.  *See Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113, at *7 (N.D. Cal. June 7, 2011) (commonality met where "class was exposed to

the same misleading and misbranded labels"); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010) (commonality met where common issue was "whether the [product] packaging and marketing materials are unlawful, unfair, deceptive or misleading to a reasonable consumer"); *Delarosa*, 275 F.R.D. at 589 (commonality met where "Plaintiff alleges a single misrepresentation [on a product's packaging] that was made identically to all potential class members"); *Bjustrom v. Trust One Mgmt. Corp.*, 199 F.R.D. 346, 348 (W.D. Wash. 2001) (commonality met where the claims arose from "a standard course of conduct which adversely affects a group of individuals and gives rise to a claim for relief").

### 3. The Named Plaintiffs' Claims Are Typical Of Class Claims.

Rule 23(a)(3) requires "the claims and defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Representative claims are typical if they are "reasonably coextensive with those of the absent class members; they need not be substantially identical." *Dukes*, 509 F.3d at 1184 (quoting *Hanlon*, 150 F.3d at 1020). Where the class representatives' interests align with the interests of the class, then the pursuit of the class representatives' individual interests necessarily advances those interests of the class. "[A] named plaintiff's claim is typical if it stems from the same event, practice or course of conduct … and is based upon the same legal or remedial theory." *Jordan*, 669 F.2d at 1321; *see also Hanlon*, 150 F.3d at 1019-20 ("[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class"); *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007) ("Under Rule 23(a)(3), it is not necessary that all class members suffer the same injury as the class representative.").

Here, Plaintiffs' and Class members' claims stem from the same underlying wrongful conduct – namely, they purchased Defendant's Neutrogena Naturals personal products based on the false and misleading representation that the Products are "natural" and free of petrochemicals. Thus, there is a "sufficient nexus" between Plaintiffs' claims and those of the Class members to satisfy the typicality requirement. *See O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 491-92

(N.D. Cal. 2011); *Zeisel*, 2011 WL 2221113, at *8 (typicality met where plaintiff's claims relating to allegedly false health-related statements on product labels were "reasonably co-extensive with those of absent class members," notwithstanding particularities of class representative's "specific medical condition"); *Chavez*, 268 F.R.D. at 378 (typicality met where defendant made "substantially the same misrepresentation" on several different beverage products, even where allegedly false statements were "worded in several variations" and where "plaintiff did not buy each product in [defendant's] beverage line").

### 4. The Named Plaintiffs And Their Counsel Adequately Represent The Proposed Class.

The adequacy of representation requirement is satisfied if (1) the proposed representative plaintiff does not have conflicts with the proposed class, and (2) the plaintiff is represented by qualified and competent counsel. *See Dukes*, 509 F.3d at 1185.

Because Plaintiffs and Class members have been allegedly injured in the same manner and seek relief for the same claims, their interests are coextensive. *See O'Donovan*, 278 F.R.D. at 492 (class representative fairly and adequately represents class where "their claims are reflective of those of the putative class members' and the relief they seek is identical to that sought for the Classes."). Plaintiffs' counsel are qualified and experienced in certifying, litigating, trying, settling, and administering nationwide class actions similar to this case. *See* Todzo Decl. ¶¶ 12-13 & Exh. 3-4. Plaintiffs and their counsel readily satisfy the requirements of Rule 23(a)(4).

### B. The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(2) and 23(b)(3).

Class certification is appropriate under Rule 23(b)(2). Neutrogena has acted on grounds that apply generally to the Class, such that final injunctive relief is appropriate respecting the Class as a whole. Neutrogena utilizes product packaging and advertising campaigns which include uniform misrepresentations that misled Plaintiffs and were and are likely to mislead the other members of the Class. Plaintiffs seek to enjoin Defendant's misrepresentations and injunctive relief will benefit them, the Class, and future purchasers of Defendant's personal care products. *See Delarosa*, 275 F.R.D. at 592 (certification under Rule 23(b)(2) appropriate where "an

injection prohibiting Defendant from selling [product] with the misleading information would 'provide relief to each member of the class.'").

In addition, class certification is appropriate under Rule 23(b)(3) because common questions of law and fact substantially predominate over any questions that may affect only individual members of the Class. Where, as here, "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. The overarching legal and factual questions in this case – which do not vary among Class members and which may be determined without reference to the individual circumstances of any Class member – include, but are not limited to:

- whether Defendant labels, advertises and markets its Neutrogena Naturals personal care products by representing that the products are "natural";

- whether such Products are indeed natural;

- whether Defendant's representations that the Products are natural is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

- whether Defendant's conduct in advertising and marketing the Products constitutes a violation of the FAL;

- whether Defendant's conduct in advertising and marketing the Products constitutes a violation of the CLRA;

- whether Defendant's conduct constitutes fraudulent, unfair, or unlawful conduct as defined by the UCL;

- whether Plaintiff and Class members are entitled to injunctive and other equitable relief based on Defendant's violations of the FAL, CLRA, and UCL;

- whether Defendant's representations concerning the Products constitute express warranties with regard to the Products pursuant to California Civil Code § 2313; and

- whether Plaintiffs and the Class are entitled to damages resulting from Defendant's breach of the express warranties made regarding the Products.

As this list demonstrates, each of Plaintiffs' contentions can be proven with "generalized evidence … on a class-wide basis." *O'Donovan*, 278 F.R.D. at 493. In other words, a determination that Neutrogena misrepresented its cosmetic products as "natural" to Plaintiffs will necessarily determine whether Neutrogena similarly misrepresented its products to all Class

16                                                              C 12-00426 PJH

members.  *See Delarosa*, 275 F.R.D. at 594.  Because "[a] common nucleus of facts and potential legal remedies dominates this litigation," Rule 23(b)(3) is satisfied here.  *Hanlon*, 150 F.3d at 1022.

Furthermore, Fed. R. Civ. P. 23(b)(3) allows the certification of a nationwide class on the facts of this case.  As several courts have recognized, the Ninth Circuit in *Mazza* did not announce a *per se* rule that California law cannot be applied to consumers nationwide.  *See, e.g.*, *In re POM Wonderful LLC Mktg. & Sales Practices Litig.*, 2012 WL 4490860, at *3 (C.D. Cal. Sept. 28, 2012); *Bruno*, 280 F.R.D. at 546–47.   Indeed, this Court has so found in a similar case involving allegations that Ben & Jerry's falsely labeled its ice cream products as natural.  *See* March 30, 2012 Order Granting Preliminary Approval of Proposed Class Action Settlement in *Astiana v. Ben & Jerry's Homemade, Inc.*, Case No. 10 Civ. 4387-PJH.   Rather, as *Mazza* itself did, courts look to California traditional choice-of-law rules to determine whether California law should apply to consumers in other states.  *See* 666 F.3d at 589.  "Under that framework, once a plaintiff shows that California has significant contact with each class member's claim, and that application of California would therefore be constitutional, the burden shifts to the defendant to show that some foreign law, rather than California law, should apply."  *POM Wonderful*, 2012 WL 4490860, at *2.  Here, Neutrogena is headquartered in California and the marketing strategies about which Plaintiffs complain were developed in California.  Moreover, each of the Product labels indicates that the Product is "Dist[ributed] by Neutrogena Corporation, Los Angeles, CA."  There is no indication that the laws of other states are materially different with respect to regulating the types of representations Neutrogena makes about its Products.  *See, e.g.*, *Bruno*, 280 F.R.D. at 550 (finding that no conflict had been shown between California's consumer protection laws and those of other states with respect to claims regarding the effectiveness of dietary supplements).  And, even if there were such a conflict, it is plain that California's interests would be more impaired were the laws of another state applied to the California-based actions of a California company.  In sum, the certification of a nationwide class is wholly appropriate in this case.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

III.    **THE PROPOSED CLASS NOTICE SATISFIES THE REQUIREMENTS OF DUE PROCESS.**

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Litig.* at § 21.312.  The Settlement Agreement provides for notice that easily satisfies Rule 23 and due process considerations.

A.    **The Method Of Notice Proposed Is Appropriate.**

The method proposed for providing notice to Class members is "reasonable" and should be approved.  Notice to the Class will be achieved shortly after entry of the Preliminary Approval Order, in at least four ways.  First, e-mail or U.S. Mail notice will be sent to the most recent e-mail or U.S. Mail address of each settlement Class member according to Neutrogena's records.  Second, a notice will be published in two magazines with nationwide circulations in the millions – *People* and *US Weekly* – and in the *San Francisco Chronicle* newspaper.  Third, press releases will be sent to the PR Newswire service and to topically relevant blogs covering beauty supplies, cosmetics, and skin care issues.  Fourth, internet and mobile phone advertisements targeting potential Class members will be run on various media services.  The Notice will be provided to Class members so that they have sufficient time to decide whether to participate in the settlement, object, or opt out.  Courts routinely find that far less comprehensive notice programs meet the requirements of due process and Rule 23.  *See, e.g.*, *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (notice adequate via U.S. mail and publication in national edition of single periodical); *In re Enron Sec. & ERISA Litig.*, 2003 WL 22494413, at *3 (S.D. Tex. July 24, 2003) (notice adequate via U.S. mail and publication in two daily newspapers).

B.    **The Contents Of The Proposed Notice Are Adequate.**

Rule 23 requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The contents of the notice to class members "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those

with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (quoting *Churchill Vill., LLC v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

Here, the proposed notice forms provide this "sufficient detail." *See* Todzo Decl. Exh. 1-C & 1-E. Together, they define the Class, explain all Class member rights, releases, and applicable deadlines, and describe in detail the injunctive and monetary terms of the settlement, including the procedures for allocating and distributing settlement funds. They plainly indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement. They detail the provisions for payment of attorneys fees and service awards to the class representatives, and provide contact information for the putative Class Counsel. This comports with settlement notices upheld in other cases. *See, e.g.*, *In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 WL 3352460, at *4 (N.D. Cal. Aug. 2, 2011) (notice adequate where "[i]t disclosed all material elements of the settlement, including class members' release of claims, their ability to opt out or object to the settlement, the amount of incentive awards and attorneys' fees sought, and estimates of the award members could expect to receive."). *See generally Rodriguez*, 563 F.3d at 962-63 (because "[s]ettlement notices are supposed to present information about a proposed settlement neutrally, simply, and understandably," they need not "detail the content of objections, or analyze the expected value" of fully litigating the case).

## IV. SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE.

The last step in the settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make the settlement evaluation. Proponents of the settlement may explain the terms and conditions of the settlement and offer argument in support of final approval. In addition, settlement class members, or their counsel, may be heard in support of or in opposition to the Settlement Agreement. The Court will determine after the Final Approval Hearing whether the settlement should be approved, and whether to enter a final order and judgment under Rule 23(e). Plaintiffs request that the Court set

a date for the final fairness hearing approximately ninety (90) days after entry of the Preliminary Approval Order.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval to the proposed settlement, provisionally certify the proposed settlement Class, appoint as "Class Counsel" the Lexington Law Group and Scott + Scott LLP, approve the proposed notice plan, and schedule a formal fairness hearing on final settlement approval approximately ninety (90) days after entry of the Preliminary Approval Order.

DATED: December 20, 2012        Respectfully submitted,

LEXINGTON LAW GROUP

By:  /s/ Mark N. Todzo
     Mark N. Todzo
     Attorneys for Plaintiffs
     DESIRÉE STEPHENSON, MARNI HABER,
     And KARVA TAM, on Behalf of Themselves
     and All Others Similarly Situated

DATED: December 20, 2012        Respectfully submitted,

SCOTT + SCOTT LLP

By:  /s/ Christopher M. Burke
     Christopher M. Burke
     Attorneys for Plaintiffs
     DESIRÉE STEPHENSON, MARNI HABER,
     And KARVA TAM, on Behalf of Themselves
     and All Others Similarly Situated

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

## CERTIFICATE OF SERVICE

On December 20, 2012, I electronically submitted the foregoing document with the Clerk of court for the U.S. District Court, Northern District of California, using the electronic case filing ("ECF") system of the Court. All parties who have consented to electronic service will receive notice of this filing by operation of the ECF system. Any parties who have not consented to electronic service will receive a paper copy of this electronically filed document through the United States Postal Service.

/s/ Mark N. Todzo
Mark N. Todzo
LEXINGTON LAW GROUP
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
Email: mtodzo@lexlawgroup.com