Mark N. Todzo (State Bar No. 168389)
Victoria Hartanto (State Bar No. 259833)
LEXINGTON LAW GROUP
503 Divisadero Street
San Francisco, CA 94117-2212
Telephone:  (415) 913-7800
Facsimile:  (415) 759-4112
mtodzo@lexlawgroup.com
vhartanto@lexlawgroup.com

Christopher M. Burke (State Bar No. 214799)
Hal D. Cunningham (State Bar No. 243048)
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
cburke@scott-scott.com
hcunningham@scott-scott.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DESIREE STEPHENSON, MARNI HABER, and KARVA TAM,  Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>NEUTROGENA CORPORATION,<br><br>Defendant. | No. C 12-00426 PJH<br><br>NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND EXPENSES; AND MEMORANDUM OF LAW IN SUPPORT THEREOF<br><br>Hearing Date:     August 21, 2013<br>Hearing Time:     2:00 p.m.<br>Judge:     Hon. Phyllis J. Hamilton |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION...........................1

III.  AWARD OF ATTORNEYS' FEES ...........................................................................3

    A.   The Settlement Terms ..........................................................................................3

        1.   Injunctive Relief..........................................................................................3

        2.   Monetary Relief ..........................................................................................4

    B.   The Legal Standards Governing the Award of Attorneys' Fees in Common Fund Cases Support the Requested Award ...........................................................5

        1.   A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases ...................................................................................................5

        2.   The Injunctive Relief Obtained for the Class Provides an Independent Basis for the Fee Award ..........................................................6

        3.   A Fee Equaling  theSlightly Over 25% of the Claim Fund Created Is Reasonable ..........................................................................................7

    C.   Consideration of the Relevant Factors Used by Courts in the Ninth Circuit Justifies a Fee Award of One-Third in This Case ...................................................7

        1.   The Result Achieved....................................................................................7

        2.   The Risks of Litigation ................................................................................8

        3.   The Skill Required and the Quality of the Work .......................................10

        4.   The Novelty and Difficulty of the Questions Presented ............................11

        5.   The Contingent Nature of the Fee and the Financial Burden Carried by Class Counsel.............................................................................11

        6.   The Fee Award Is Consistent with Fee Awards in Similar Complex Class Action Litigations................................................................13

        7.   The Customary Fee ....................................................................................13

        8.   Reaction of the Class Supports Approval of the Attorneys' Fees Requested..................................................................................................14

IV.   THE REQUESTED FEE IS MORE THAN REASONABLE UNDER A LODESTAR CROSS-CHECK ................................................................................15

LEAD COUNSEL'S NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF COSTS AND EXPENSES - No. C 12-00426 PJH

- i -

1

2

**Page(s)**

V.      COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY
         INCURRED TO ACHIEVE THE BENEFIT OBTAINED..............................................15

VI.     THE COURT SHOULD APPROVE THE PAYMENT OF INCENTIVE
         AWARDS TO THE CLASS REPRESENTATIVES AS PROVIDED FOR IN
         THE SETTLEMENT .........................................................................................................17

VII.    CONCLUSION..................................................................................................................18

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abrams v. Lightolier Inc.*,
  50 F.3d 1204 (3d Cir. 1995)..................................................................................16

*Arenson v. Bd. of Trade of City of Chicago*,
  372 F. Supp. 1349 (N.D. Ill. 1974) .......................................................................11

*Barbosa v. Cargill Meat Solutions Corp.*,
  No. 1:11–cv–00275, 2013 WL 3340939 (E.D. Cal. July 2, 2013) .........................18

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988)..............................................................................7

*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993).......................................................................................8

*Bezio v. Gen. Elec. Co.*,
  655 F. Supp. 2d 1628 (N.D.N.Y. 2009)..................................................................18

*Blum v. Stenson*,
  465 U.S. 886 (1984).........................................................................................5, 13

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens County, Okla.*,
  8 F.3d 722 (10th Cir. 1993) ..................................................................................16

*Cent. R.R. & Banking Co. of Ga. v. Pettus*,
  113 U.S. 116 (1885)..................................................................................................5

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  741 F. Supp. 84 (S.D.N.Y. 1990)...........................................................................17

*Gottlieb v. Wiles*,
  150 F.R.D. 174 (D. Colo. 1993), *rev'd and remanded on other grounds sub nom.*
  *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994) ..................................................16

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) .....................................................................................15

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)............................................................................................7, 15

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*,
  No. 05-232, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) .....................................16

1

2                                                                        **Page(s)**

3   *In re American Investors Life Insurance Co. Annuity Marketing and Sales Practices*
        *Litig.*,
4       263 F.R.D. 226 (E.D. Pa. 2009).................................................................................17

5
    *In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
6       No. 07-61542-Civ., 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)..........................................12

7   *In re Equity Funding Corp. of Am. Sec. Litig.*,
        438 F. Supp. 1303 (C.D. Cal. 1977) ........................................................................11
8
    *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,
9       No. 02-ML-1475, 2005 WL 1594389 (C.D. Cal. June 10, 2005)................................9, 10, 13

10  *In re Ikon Office Solutions, Inc. Sec. Litig.*,
        194 F.R.D. 166 (E.D. Pa. 2000).............................................................................14
11
    *In re King Res. Co. Sec. Litig.*,
12      420 F. Supp. 610 (D. Colo. 1976)..................................................................7, 9, 11
13
    *In re M.D.C. Holdings Sec. Litig.*,
14      No. CV 89-0090, 1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ...........................................14

15  *In re McDonnell Douglas Equip. Leasing Sec. Litig.*,
        842 F. Supp. 733 (S.D.N.Y. 1994)...........................................................................16
16
    *In re Media Vision Tech. Sec. Litig.*,
17      913 F. Supp. 1362 (N.D. Cal. 1996) ................................................................15, 16

18  *In re Mego Fin. Corp. Sec. Litig.*,
        213 F.3d 454 (9th Cir. 2000) ..........................................................................13, 14
19
    *In re Pacific Enter. Sec. Litig.*,
20      *47 F.3d 373* (9th Cir. 1995*) ..............................................................................13

21
    *In re Prudential-Bache Energy Income P'ships Sec. Litig.*,
22      No. 888, 1994 WL 202394 (E.D. La. May 18, 1994)......................................................10, 12

23  *In re Rite Aid Corp. Sec. Litig.*,
        396 F.3d 294 (3d Cir. 2005)...................................................................................14
24
    *In re Sumitomo Copper Litig.*,
25      74 F. Supp. 2d 393 (S.D.N.Y. 1999)........................................................................15
26
    *In re Synthroid Mktg. Litig.*,
27      264 F.3d 712 (7th Cir. 2001) ..........................................................................13, 15

28

**Page(s)**

*In re Synthroid Mktg. Litig.*,
    325 F.3d 974 (7th Cir. 2003) ........................................................................13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ................................................................ *passim*

*J.N. Futia Co. v. Phelps Dodge Indus., Inc.*,
    No. 78 Civ. 4547, 1982 WL 1892 (S.D.N.Y. Sept. 17, 1982) ................................10

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ........................................................................11

*Keith v. Volpe*,
    501 F. Supp. 403 (C.D. Cal. 1980) ..............................................................15

*Lindy Bros. Builders Inc. of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*,
    540 F.2d 102 (3d Cir. 1976)..........................................................................8

*Matter of Cont'l Ill.Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ..........................................................13, 16, 17

*McGee v. Continental Tire N.A., Inc.*,
    Civ. No. 06-6234, 2009 WL 539893 (D.N.J. Mar. 4, 2009)....................................18

*Miltland Raleigh-Durham v. Myers*,
    840 F. Supp. 235 (S.D.N.Y. 1993).................................................................16

*New England Health Care Employees Pension Fund v. Fruit of the Loom*,
    234 F.R.D. 627 (W.D. Ky. 2006)...................................................................16

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ..................................................................5, 6, 7

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ......................................................................7

*Rabin v. Concord Assets Group*,
    No. 89 Civ 6130, 1991 WL 275757 (S.D.N.Y. Dec. 19, 1991)..............................15

*Roberts v. Texaco, Inc.*,
    979 F. Supp. 185 (S.D.N.Y. 1997).................................................................15

*Six Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) .......................................................................6

*Thornberry v. Delta Air Lines, Inc.*,
    676 F.2d 1240 (9th Cir. 1982) ......................................................................16

NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF- No. C 12-00426 PJH

- v -

**Page(s)**

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ..................................................................6, 7

*Trustees v. Greenough*,
    105 U.S. 527 (1881)..............................................................................5

*Vincent v. Hughes Air W., Inc.*,
    557 F.2d 759 (9th Cir. 1977) ................................................................5

*Vizcaino v. Microsoft Corp.*,
    142 F. Supp. 2d 1299 (W.D. Wash. 2001).............................................11

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...................................................6, 13, 15

**OTHER AUTHORITIES**

1 Alba Conte, ATTORNEY FEE AWARDS (3d ed. 2004) ..................................14

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE on August 21, 2013 at 2:00 p.m., or as soon thereafter as this matter may be heard by and before the Honorable Phyllis J. Hamilton, United States District Judge, at the United States Courthouse, Oakland Courthouse, Courtroom 3, 3rd Floor, 1301 Clay Street, Oakland, California 94612, Plaintiffs Desiree Stephenson, Marni Haber, and Karva Tam ("Plaintiffs"), on behalf of the proposed Class (defined herein) will and hereby do move for an award of attorneys' fees, and the reimbursement of costs and expenses.  This motion is based upon the Memorandum of Points and Authorities in Support of Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Costs and Expenses, the Declaration of Mark Todzo in Support thereof, submitted herewith, the Stipulation of Settlement dated December 20, 2012, and all other pleadings and matters of record.

## MEMORANDUM OF LAW

## I.     INTRODUCTION

As detailed in Plaintiffs' accompanying Brief in Support of Final Approval of Proposed Class Settlement ("Final Approval Brief"), the Stipulation of Settlement ("Settlement")[1] entered into with Defendant Neutrogena Corporation. ("Neutrogena" or "Defendant") in this action represents a manifestly favorable outcome for the Class Members,[2] particularly when judged in the context of the meaningful litigation risks attendant in this action.  As is more fully set forth herein and in Plaintiffs' Final Approval Brief, the requested Fee Award is fair and reasonable. Therefore, Plaintiffs and Class Counsel respectfully request that their application for an award of attorneys' fees and costs and approval of incentive awards be granted.

## II.    FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

Defendant Neutrogena is a manufacturer, seller, and distributor of a line of skincare

---

[1]     The Settlement is attached as Exhibit 1 to the Declaration of Mark Todzo in Support of Plaintiffs' Motion for Preliminary Approval of Proposed Class Settlement Agreement.  ECF No. 45-1.

[2]     Unless otherwise specified, all capitalized terms are defined in the Settlement and have the same meaning herein.

products known as Neutrogena Naturals (the "Products"), which are sold to consumers across the nation, including in California.  Plaintiffs allege that they were induced to purchase the Products by Neutrogena's representations and claims that the Products are natural; in fact, Plaintiffs allege, the Products contain various artificial and synthetic ingredients.  Plaintiffs further allege that certain statements made by Neutrogena in marketing and advertising the Products, including that they contain "[n]o harsh chemical sulfates, parabens, petrochemicals, dyes, phthalates," are false and misleading.  Plaintiffs seek to represent a class of persons throughout the United States who, like themselves, purchased the Products at a price premium, erroneously believing them to be natural based on Neutrogena's representations.  The primary objectives of Plaintiffs' case are to:  (1) require Neutrogena to halt its allegedly deceptive marketing and advertising practices (thereby protecting consumers in the future); and (2) to disgorge the premiums it allegedly obtained as a result of its misrepresentations (thereby compensating consumers for past wrongdoings).

On January 26, 2012, Plaintiff Desiree Stephenson filed a Complaint against Neutrogena in the U.S. District Court for the Northern District of California.  The Complaint alleged: (1) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, *et seq.*; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §17500, *et seq.*; and California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §1750, *et seq.*; and (2) breach of express warranty with regard to four Neutrogena Naturals "cleanser" products:  the Purifying Facial Cleanser, Purifying Pore Scrub, Face and Body Bar, and Fresh Cleansing + Makeup Remover.  On March 28, 2012, Plaintiff Stephenson filed a First Amended Complaint alleging the same causes of action, but adding two additional Neutrogena Naturals "moisturizer" products:  the Multi-Vitamin Nourishing Night Cream and Multi-Vitamin Nourishing Moisturizer.

On July 27, 2012, the Court granted in part and denied in part Neutrogena's Motion to Dismiss, dismissing claims as to the five Products that Plaintiff Stephenson did not purchase and striking Plaintiff Stephenson's prayer for injunctive relief insofar as she did not adequately allege a risk of future injury.  However, the Court gave Plaintiff Stephenson leave to file an amended

1    complaint to add allegations that she intends to purchase Neutrogena Naturals Products in the
2    future if the alleged misrepresentations are corrected.   On October 26, 2012, Plaintiffs filed a
3    Second Amended Complaint adding these allegations, and also adding Marni Haber and Karva
4    Tam – two California residents who purchased the Products under the misguided belief that they
5    were natural and contained no petrochemicals – as named Plaintiffs and putative Class
6    representatives.   Neutrogena filed an Answer to that Second Amended Complaint on November
7    9, 2012.

8          Even prior to the Court's July 27, 2012 Order on Neutrogena's Motion to Dismiss, the
9    parties had begun discussions regarding the underlying factual allegations and potential
10   settlement options.   On August 7, 2012, the parties participated in settlement mediation with the
11   Honorable Edward A. Panelli (Retired).    During the course of the mediation session and
12   thereafter, Neutrogena provided Plaintiffs with vital information pertinent to the legitimacy and
13   scope of Plaintiffs' claims, including sworn statements to Plaintiffs confirming the composition
14   and labeling of the Neutrogena Naturals products and the number of products sold to date.   These
15   discussions and the mediation resulted in the settlement terms discussed below.    Although
16   Neutrogena has numerous defenses to the underlying allegations and the basis for certifying the
17   Class, in recognition of the risks of the litigation and the certain, significant costs of defending it,
18   Neutrogena agreed to a settlement that will provide valuable benefits to Class Members.

19   **III.    AWARD OF ATTORNEYS' FEES**

20        **A.    The Settlement Terms**

21         The Settlement resolves the claims alleged in the Second Amended Complaint and
22   includes all persons throughout the United States who purchased one or more of Defendant
23   Neutrogena's Products, at any time from January 1, 2011 and April 22, 2013 (the "Class
24   Period").   *See* Settlement at ¶ I.A.14.   The Settlement has an injunctive component and a
25   monetary component, and each form of relief provides a distinct benefit to the Class.

26              **1.    Injunctive Relief**

27         First, in settlement of Plaintiffs' and the Class's claims, Neutrogena has agreed to change
28   the labeling and, where applicable, packaging of all Products.   *See* Settlement at ¶ III.A.1.   In

1    order to cure any misperception that the Products are all-natural, Neutrogena will include a

2    statement regarding the exact percentage of the Product that is naturally derived on the front of

3    the labels and/or packages of each Product.   *Id.* In addition, Neutrogena will remove the term

4    "petrochemicals" from the statement "No harsh chemical sulfates, parabens, petrochemicals,

5    dyes, phthalates" on the Product labels in order to cure the alleged misrepresentation resulting

6    from Plaintiffs' contention that the Products contain petrochemical residues.   *Id.*

**2.    Monetary Relief**

8    Second, the parties have agreed that Neutrogena will pay $1,300,000 (the "Claim Fund")

9    for distribution to Class Members who submit a valid Claim Form.   *Id.* at ¶43.  Class Members

10   can submit a claim for up to $1 per "cleanser" Product purchased during the Class Period and $2

11   per "moisturizer" Product purchased during the Class Period up to a maximum of $10.   *Id.* at

12   ¶48.  Thus, Class Counsel have secured a common fund recovery for the Class based on a fully

13   compensable purchase price to be paid to Class Members, subject to *pro rata* reduction since the

14   aggregate claims exceed the Claim Fund.   *See* Settlement at ¶ III.B.2(d).  In addition, Neutrogena

15   has agreed to pay attorneys' fees and expenses awarded by the Court up to $500,000. Neutrogena

16   will pay the attorneys' fees and expenses in addition to and apart from the Claim Fund.  In total,

17   Neutrogena has made $1,800,000 available in the Settlement.

18   Given the inherent risks in litigating a damages class in this case, this benefit is highly

19   significant.   Thus, as permitted under the Settlement, Plaintiffs and Class Counsel requests

20   attorneys' fees and costs of $500,000, which represents 28% of the funds made available in the

21   Settlement (the "Fee Award").   *See* Settlement at ¶ VIII.A.1-6.  In achieving the injunctive and

22   monetary relief in this matter, Class Counsel worked 963.7 hours, all on a contingency basis with

23   no guarantee of success or ever being paid.   *See* Declaration of Mark Todzo ("Todzo Decl.") at

24   ¶¶22, Exhibit 6; Declaration of Daryl F. Scott ("Scott Decl.") at ¶3.  The requested Fee Award

25   reflects the risk taken by Class Counsel, as well as the estimable results achieved.   When

26   utilizing this Circuit's preferred method of contingency-fee determination – percentage of the

27   fund with a lodestar cross-check – it is abundantly clear that the requested fee not only is

28   reasonable, but also is well within the range of fees awarded in similar contingency cases.

**B.     The Legal Standards Governing the Award of Attorneys' Fees in Common Fund Cases Support the Requested Award**

**1.     A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases**

For their efforts in creating a common fund for the benefit of the Class, Class Counsel seek a reasonable percentage of the fund recovered as attorneys' fees.  The percentage method of awarding fees has become an accepted, if not the prevailing, method for awarding fees in common fund cases in this Circuit and throughout the United States.  Indeed, the Fee Award requested here provides no multiplier as Class Counsel requests a fee less than its lodestar.

It has long been recognized in equity that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees."  *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  The purpose of this doctrine is to avoid unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").  This rule, known as the common fund doctrine, is firmly rooted in American case law.  *See, e.g.*, *Trustees v. Greenough*, 105 U.S. 527 (1881); *Cent. R.R. & Banking Co. of Ga. v. Pettus*, 113 U.S. 116 (1885).[3]

In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that "under the 'common fund doctrine'" a reasonable fee may be based "on a percentage of the fund

---

[3]     In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989), the Ninth Circuit explained the principle underlying fee awards in common fund cases:

> Since the Supreme Court's 1885 decision in *Central Railroad & Banking Co. of Ga. v. Pettus*, 113 U.S. 116 (1885), it is well settled that the lawyer who creates a common fund is allowed an ***extra*** reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit.  The amount of such a reward is that which is deemed "reasonable" under the circumstances.

*Id*. at 271 (emphasis in original).

bestowed on the class."[4]   In this Circuit, the district court has discretion to award fees in common fund cases based on either the so-called lodestar/multiplier method or the percentage-of-the-fund method.  *WPPSS*, 19 F.3d at 1296.  In *Paul, Johnson*, 886 F.2d 268, *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990), *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993), and *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002), the Ninth Circuit expressly approved the use of the percentage method in common fund cases.

**2.      The Injunctive Relief Obtained for the Class Provides an Independent Basis for the Fee Award**

The Settlement requires Neutrogena to provide significant non-monetary relief which, while not readily quantifiable, provides real value to the Class.  As discussed in Plaintiffs' accompanying Final Approval Brief, the injunctive relief will fully remedy Defendant's alleged misrepresentations by requiring it to place the actual percentage of natural ingredients on the front label and removing the statement that the Products contain no petrochemicals.

The presence of non-quantifiable injunctive relief is "a 'relevant circumstance' in determining what percentage of the common fund class counsel should receive as attorneys' fees." *Staton v. Boeing Co*., 327 F.3d 938, 946 (9th Cir. 2003); s*ee also Dennings v. Clearwire Corp.,* No. C10-1859, 2013 WL 1858797, at *7 (W.D. Wash. May 3, 2013); *McCoy v. Health Net, Inc*., 569 F.Supp.2d 448, 478 (D.N.J. 2008).   Here, the meaningful non-monetary relief obtained for the Class confirms the "reasonableness and propriety" of the requested Fee Award. In fact, in many instances, classwide injunctive relief alone is sufficient to warrant an award of attorneys' fees and costs that is equal to, or even in excess of, lodestar.  *See, e.g., Goldkorn v. County of San Bernardino*, No. EDCV 06-707, 2012 WL 476279 (C.D. Cal. Feb. 13, 2012) (awarding class counsel $690,000 in attorneys' fees and costs in settlement for injunctive and declaratory relief only, without any monetary award to the class, in action regarding disability access to courthouses in San Bernardino County); *Wehlage v. Evergreen at Arvin LLC*, No. 4:10-

---

[4]      Unless otherwise noted, citations are omitted and emphasis is added.

cv-05839-CW, 2012 WL 4755371 (N.D. Cal. Oct. 4, 2012) (awarding $1,835,857.82 in attorneys' fees to class counsel for class-wide injunctive relief settlement regarding staffing at skilled nursing facilities, with no monetary award to the class). Here, after obtaining significant monetary and injunctive relief, Class Counsel seek a fee award that is less than lodestar, an award that is patently reasonable.

### 3.   A Fee Equaling Slightly Over 25% of the Claim Fund Created Is Reasonable

In *Paul, Johnson*, the Ninth Circuit established 25% of the fund as the "benchmark" award for attorneys' fees. 886 F.2d at 272; *see also Torrisi*, 8 F.3d at 1376 (reaffirming 25% benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (same). However, the guiding principle in this Circuit is that a fee award be "'reasonable under the circumstances.'" *WPPSS*, 19 F.3d at 1295 n.2. Here, a fee award slightly in excess of the 25% benchmark is reasonable for a number of reasons. Given the value of the injunctive relief to the Class, injunctive relief that was the principal relief sought in the case, the additional 2.7% of the monetary relief is reasonable. Moreover, the contingent-fee risk, the number of hours dedicated to this case, and the financial commitment of Class Counsel, all justify an award of 28% of the monetary recovery.

### C.   Consideration of the Relevant Factors Used by Courts in the Ninth Circuit Justifies a Fee Award of One-Third in This Case

Class Counsel submit that, as the factors discussed below demonstrate, the Fee Award is reasonable under the circumstances of this case and should be approved.

### 1.   The Result Achieved

Courts have consistently recognized that the result achieved is an important factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client"); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained.").

1    Class Counsel negotiated a $1.3 million Settlement for Class Members, which is a

2    certain, present return for the Class.  Class Members can submit a claim for $1 or $2 per Product

3    purchased during the Class Period, which represents a substantial proportion -- between 30% and

4    75% -- of the estimated damages.  Settlement at ¶¶ III.B. 1-3; Todzo Decl., ¶15.  The Settlement

5    also provides up to $500,000 for attorneys' fees and expenses awarded by the Court, which will

6    not diminish the Claim Fund.    Moreover, the injunctive relief obtained will benefit each and

7    every Class Member through the corrective labeling, regardless of whether the Class Member

8    submits a claim.  *See* Settlement at ¶ III.A.1.  Given the inherent litigation risks in this putative

9    nationwide class action, the Settlement is highly significant as it provides tangible benefits

10   without the risks and delays of continued litigation.  Thus, it is clear that Class Counsel delivered

11   a significant benefit to Neutrogena consumers nationwide.

12   As of July 17, 2013, over 10,000 claims have been submitted and only a single request

13   for exclusion has been received.   *See* Todzo Decl., Exhibit 3.  There are no objections to the

14   Settlement or the Fee Award.  This *de minimus* number of requests for exclusion indicates a

15   highly positive response to the Settlement.[5]  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,

16   459 (9th Cir. 2000).  The lack of any meaningful negative response to the Settlement evinces the

17   quality and value of the Settlement.  Class Counsel will provide a final tally of the exclusions

18   and objections, and respond fully to their substance.   The data to date, however, reflects

19   overwhelming support from the Class.  Class Counsel, accordingly, should be appropriately

20   rewarded for their achievement.

21                              **2.       The Risks of Litigation**

22   Numerous cases have recognized that risk is an important factor in determining a fair fee

23   award.  *See, e.g.*, *WPPSS*, 19 F.3d at 1299-1301; *Lindy Bros. Builders Inc. of Philadelphia v.*

24   *Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976).  Uncertainty that an

25

26   ───────────────────

27        [5]       The deadline for submitting requests for exclusion and filing objections to the
     Settlement was July 5, 2013.

28

1    ultimate recovery would be obtained is highly relevant in determining risk.  *WPPSS*, 19 F.3d at

2    1300; *Lindy*, 540 F.2d at 117.  As the court aptly observed in *King Resources*:

> 3    The litigation also involved unique and substantial issues of law in the
> technical area of SEC Rule 10b-5, . . . difficult, complex and oft-disputed class
> 4    action questions, and difficult questions regarding computation of damages.

5                                                    * * *

> 6    In evaluating the services rendered in this case, appropriate consideration
> must be given to the risks assumed by plaintiffs' counsel in undertaking the
> 7    litigation.  The prospects of success were by no means certain at the outset, and
> indeed, the chances of success were highly speculative and problematical.

8
9    420 F. Supp. at 632, 636-37; *see also In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,

10   No. 02-ML-1475, 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005) ("The risks assumed by

11   Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in

12   determining counsel's proper fee award.").

### a.    Without This Settlement, Class Counsel Would
13                 Encounter Time-Consuming, Lengthy Litigation

14          Here, substantial risks and uncertainties were present from the outset of this litigation that

15   made it far from certain that any recovery for the Class would be obtained.  As a complex

16   consumer class action on behalf of a putative nationwide class, this case would entail hard-

17   fought and lengthy litigation.  This case has been pending for approximately 18 months.  If

18   litigation were to continue, additional party and non-party discovery would be sought, requiring

19   time-consuming review.   The case also would require extensive expert analysis of the

20   composition of the Products, as well as the consumer impact of Defendant's representations

21   regarding the Product's purported attributes.  The case likely would shape up to be a battle of the

22   experts, and thus, expert expenses would be substantial.  As a putative nationwide class action,

23   complex legal and factual issues would be the subject of pretrial motions, including for class

24   certification.   The class certification decision likely would lead to the inevitable Rule 23(f)

25   interlocutory appeal, potentially delaying prosecution of the case should a stay pending appeal be

26   granted.  Given the prospect of protracted litigation, engendering enormous time and monetary

27   expenditure, this factor weighs in favor of Plaintiffs' and Class Counsel's application.  While

28   Class Counsel remain confident they could prevail, this presented an additional risk of litigation

1   that could have terminate the litigation at summary judgment.

2           **b.**      **Class Counsel Undertook the Risk of Non-Payment**

3         Class Counsel undertook this action on an entirely contingent-fee basis, assuming a

4   substantial risk that the litigation would yield no, or very little, recovery and leave them

5   uncompensated for their time, as well as for their substantial out-of-pocket expenses.   Courts

6   across the country have consistently recognized that the risk of receiving little or no recovery is a

7   major factor in considering an award of attorneys' fees.   *See, e.g.*, *In re Warner Communications*

8   *Sec. Litig.*, 618 F. Supp. 735, 747-49 (S.D.N.Y. 1985).   As one court stated:

9                     Counsel's contingent fee risk is an important factor in determining
10                    the fee award.   Success is never guaranteed and counsel faced
                      serious risks since both trial and judicial review are unpredictable.
11                    Counsel advanced all of the costs of litigation, a not insubstantial
                      amount, and bore the additional risk of unsuccessful prosecution.
12
    *In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394, at *6
13
    (E.D. La. May 18, 1994).
14
15        Despite the litigation risks, Class Counsel were able to forge a resolution that provides

16  significant present relief to the Class, including substantial monetary recovery.   Thus, there is

17  little doubt that Class Counsel undertook a significant risk here and the Fee Award, respectfully,

18  should reflect that risk

19        In light of the forgoing, it cannot be disputed that Class Counsel undertook a risky

20  proposition when they accepted this case on a contingency basis.   Likewise, there is no question

21  that if this case had not settled, Class Counsel faced the substantial risk of many more years of

22  litigation with no guarantee of any compensation.   Accordingly, this factor strongly supports the

23  requested fee.

24            **3.**      **The Skill Required and the Quality of the Work**

25        The successful prosecution of these complex claims required the participation of highly

26  skilled and specialized attorneys.   *See Heritage Bond*, 2005 WL 1594389, at *12 ("The

27  experience of counsel is also a factor in determining the appropriate fee award.").   From the

28  outset, Class Counsel engaged in a significant effort to obtain the maximum recovery for the

Class.  Class Counsel demonstrated that they would work to develop sufficient evidence to support a convincing case.

Class Counsel were able to negotiate a settlement they believe is fair under all the circumstances.  The skill demonstrated by Class Counsel supports the requested fee.  *See, e.g.*, *J.N. Futia Co. v. Phelps Dodge Indus., Inc.*, No. 78 Civ. 4547, 1982 WL 1892 (S.D.N.Y. Sept. 17, 1982).  The quality of opposing counsel is also important in evaluating the quality of the work done by Plaintiffs' Counsel.  *See, e.g.*, *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *King Res.*, 420 F. Supp. at 634; *Arenson v. Bd. of Trade of City of Chicago*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974).  Class Counsel were opposed in this litigation by counsel from a large international law firm with a well-deserved reputation for vigorous advocacy on behalf of its clients.  Defense counsel challenged virtually every aspect of the case.  It simply cannot be disputed that this factor weighs in favor of the requested fee.

### 4.   The Novelty and Difficulty of the Questions Presented

The novelty and difficulty of the issues in a case are significant factors to be considered in making a fee award.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1306 (W.D. Wash. 2001); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). This case was novel and difficult. The issue in this case concerned the marketing of cosmetic and personal care Products containing various artificial and synthetic ingredients with suggestive, but not necessarily explicit, claims that the Products are Natural. As this Court has recognized, there is no established statutory or regulatory definition of what constitutes a natural cosmetic or personal care product.  Moreover, the statements challenged appeared in a variety of media, including on the Product's label, website, and in print, all of which included different variations and combinations of phrases so that Plaintiffs were tasked with the particularly difficult challenge of demonstrating a common message or theme.

For these reasons, this factor weighs in favor of the requested Fee Award.

### 5.   The Contingent Nature of the Fee and the Financial Burden Carried by Class Counsel

A determination of a fair fee must include consideration of the contingent nature of the

fee.  It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.  *See* Richard A. Posner, ECONOMIC ANALYSIS OF LAW §21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose. *WPPSS*, 19 F.3d at 1299.

Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees.  For example, in awarding counsel's attorneys' fees in *Prudential-Bache Energy Income P'ships Sec. Litig.*, the court noted the risks that plaintiffs' counsel had taken:

> Although today it might appear that risk was not great based on Prudential Securities' global settlement with the Securities and Exchange Commission, such was not the case when the action was commenced and throughout most of the litigation.  Counsel's contingent fee risk is an important factor in determining the fee award.  Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable.  Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

*Prudential-Bache Energy Income P'ships Sec. Litig.*, 1994 WL 202394, at *6.

These risks are not illusory.  There are numerous class actions in which plaintiffs' counsel expended thousands of hours, and yet received no remuneration whatsoever despite their diligence and expertise.  In fact, even when a plaintiff is successful at trial, payment is not guaranteed.  *See In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-Civ., 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting judgment as a matter of law for defendants after jury returned verdict for plaintiffs).

The risks in this case were no different.  Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result and that such a result would only be realized after significant amounts of time, effort and expense had been expended.  Indeed, Class Counsel have received no compensation for their efforts during the course of this litigation.  Absent this settlement, there was a sizeable risk that at the end of

the day Class Members, as well as their counsel, would obtain no recovery.  Counsel for the Plaintiffs have risked non-payment of $18,083.25 in expenses and over $501,579 in attorney time expended on this matter, knowing that if their efforts were not successful, no fee would be paid and that they would not recoup their expenses.  Accordingly, this factor plainly supports the requested fee award.

### 6.   The Fee Award Is Consistent with Fee Awards in Similar Complex Class Action Litigations

The fee requested is, consistent with the fees awarded in other class actions:

- *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) (upholding award of 33.3% of $1.725 million settlement);

- *Smith v. Qwest Communications Co., LLC*, No. 11 Civ. 2599, 2013 WL 3200592, at *3 (N.D. Cal. June 24, 2013) (granting fee and expense award equaling 28.68% of the common fund);

- *Johnson v. General Mills, Inc*., No. 10 Civ. 00061,  2013 WL 3213832, at *6 (C.D. Cal. June 17, 2013)  (awarding 30% of the total settlement fund as fees in a consumer class action);

- *Smith v. Cardinal Logistics Mgmt. Corp*., No. 07-2104. 2011 WL 3667462, at *5 (N.D. Cal. Aug 22, 2011) (awarding fees equaling 28% of a common fund);

The fees paid in these comparable cases support the 28% Fee Award requested, which is clearly within the range of approvable fees and costs in this Circuit.

### 7.   The Customary Fee

Circuit courts and scholars have encouraged the "mimic the market" approach in setting fees in common fund class action cases.  *See Matter of Cont'l Ill.Sec. Litigl*, 962 F.2d 566, 568 (7th Cir. 1992) ("[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price.  It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order."); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."); *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 975 (7th Cir. 2003) ("A court must give counsel the market rate for legal services.").  Thus, courts often look at fees awarded in comparable cases to

1  determine if the fee requested is reasonable.  *Vizcaino*, 290 F.3d at 1050 n.4.

2      If this were a non-representative litigation, the customary fee arrangement would be

3  contingent, on a percentage basis, and in the range of 30% to 40% of the recovery.  *Blum*, 465

4  U.S. at 904 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff

5  recovers.") (concurring); *In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090, 1990 WL 454747,

6  at *7 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally

7  ranged between 30% and 40% of the total recovery."); *In re Ikon Office Solutions, Inc. Sec.*

8  *Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (same).  Accordingly, the customary contingent fee

9  in the private marketplace supports a finding that the one-third fee request in this case is fair and

10  reasonable.[6]

11          **8.**     **Reaction of the Class Supports Approval of the Attorneys'**
    **Fees Requested**

12

13      A dedicated website,  http://www.facialcleansersettlement.com/, was also created, and all

    relevant documents and dates were posted thereon.  *See* Todzo Decl., Exhibit 3.

14

15      To date, no objections to the requested amount of attorneys' fees and expenses have been

16  received. The Third Circuit has noted that a low level of objections is a "rare phenomenon."  *In*

17  *re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005).  Moreover, as this Circuit has

18  held, a small number of objections do not stand in the way of approval of a reasonable fee.  *See*

19  *Mego Fin.*, 213 F.3d at 459.  The reaction of the Class, therefore, weighs heavily in favor of

20  approving the fee request.

---

21      [6]    Professor Conte acknowledged the propriety of adequately compensating counsel

22  based on the result obtained in common fund cases:

23        [C]ourts have been careful to award a fully compensable reasonable fee based on
          the underlying economic inducement for class action lawyers to pursue potentially

24        expensive or complex common-fund class litigation.  These lawyers assume the
          risk of no compensation unless they successfully confer common-fund benefits on

25        the class, based on their reasonable expectation that they will share in the
          recovery in a fair proportion, in contrast to receiving a fee based initially on time-

26        expended criteria that fail to give the results-obtained factor primary
          consideration.

27  1 Alba Conte, ATTORNEY FEE AWARDS §1.09, at 27 (3d ed. 2004).

28

**IV.   THE REQUESTED FEE IS MORE THAN REASONABLE UNDER A LODESTAR CROSS-CHECK**

The first step in applying the lodestar cross-check is to determine the dollar value of the proposed percentage fee award.  Here, Class Counsel request a total fee and cost reimbursement of $500,000.  The next step requires the Court to ascertain the lodestar figure by multiplying the number of hours worked by the hourly rate of counsel.  The Court can the determine an implied multiplier that may be assessed for reasonableness by taking into account the contingent nature and risks of the litigation, the results obtained, and the nature of and quality of the services rendered by plaintiffs' counsel.  *See, e.g.*, *Hensley*, 461 U.S. 424.  In so doing, "'courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.'" *Vizcaino*, 290 F.3d at 1051.

Here, the cumulative number of hours expended by Class Counsel is 963.7, and the resulting lodestar for the services performed is $501,579.  *See* Todzo Decl. at ¶¶22, Exhibit 6; Scott Decl. at ¶3. The requested fee is less than the lodestar.  A multiplier of less than one demonstrates that the requested fee is within the range of reasonableness, because it is common for courts to enhance the lodestar in complex litigation by multipliers of between 3.0 and 4.5, and many courts have awarded higher multipliers.  *See, e.g.*, *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) ("'In recent years multipliers of between 3 and 4.5 have been common' in federal securities cases."); *Rabin v. Concord Assets Group*,  No. 89 Civ 6130, 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (multipliers between 3 and 4.5 have been common in recent years); *Vizcaino*, 290 F.3d at 1051 (finding multipliers ranged as high as 19.6, though most run from 1.0 to 4.0); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (awarding multiplier of 5.5); *Keith v. Volpe*, 501 F. Supp. 403, 414 (C.D. Cal. 1980) (multiplier of 3.5).  Consequently, the attorneys' fees sought are plainly reasonable using a lodestar cross-check.

**V.   COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED**

In addition to an award of attorneys' fees, attorneys who create a common fund for the

1   benefit of a class are also entitled to payment of reasonable litigation expenses and costs from

2   Neutrogena.  *Synthroid*, 264 F.3d at 722; *Cont'l Ill.*, 962 F.2d at 570.  Class Counsel in this case

3   have incurred expenses in the aggregate amount of $18,083.25 while prosecuting the action, and

4   these expenses are set forth in the Todzo Decl. at ¶¶22, Exhibit 6; Scott Decl. at ¶3.

5        The appropriate analysis to apply in deciding which expenses are compensable in a

6   common fund case of this type is whether the particular costs are of the type typically billed by

7   attorneys to paying clients in the marketplace.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.

8   1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses

9   that 'would normally be charged to a fee paying client.'"); *see also In re Media Vision Tech. Sec.*

10  *Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996).  Therefore, it is proper to reimburse reasonable

11  expenses even though they are greater than taxable costs.  *Id.*; *see also Bratcher v. Bray-Doyle*

12  *Indep. Sch. Dist. No. 42 of Stephens County, Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993)

13  (expenses reimbursable if they would normally be billed to client); *Abrams v. Lightolier Inc.*, 50

14  F.3d 1204, 1225 (3d Cir. 1995) (expenses recoverable if customary to bill clients for them);

15  *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be

16  compensated for reasonable out-of-pocket expenses incurred and customarily charged to their

17  clients, as long as they 'were incidental and necessary to the representation' of those clients.").

18  The categories of expenses for which Class Counsel seek reimbursement are the type of expenses

19  routinely charged to hourly paying clients and should, therefore, be reimbursed, here, from

20  Defendant.

21        Among other things, Class Counsel incurred costs while performing computerized

22  research.  These are the charges for computerized factual and legal research services such as

23  LexisNexis and Westlaw.  It is standard practice for attorneys to use LexisNexis and Westlaw to

24  assist them in researching legal and factual issues and reimbursement is proper.  *See Media*

25  *Vision*, 913 F. Supp. at 1371; *In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*, No. 05-232,

26  2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) (online legal research reimbursable); *New England*

27  *Health Care Employees Pension Fund v. Fruit of the Loom*, 234 F.R.D. 627 (W.D. Ky. 2006)

28  (electronic database and computer research charges are reimbursable).  Indeed, courts recognize

1   that these tools create efficiencies in litigation and, ultimately, save clients and the class money.

2   *See Cont'l Ill.*, 962 F.2d at 570.  In approving expenses for computerized research, the court in

3   *Gottlieb v. Wiles*, 150 F.R.D. 174, 186 (D. Colo. 1993), *rev'd and remanded on other grounds*

4   *sub nom. Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994), underscored the time-saving attributes

5   of computerized research as a reason reimbursement should be encouraged.  The court also noted

6   that fee-paying clients reimburse counsel for computerized legal and factual research.  *Wiles*, 150

7   F.R.D. 174.

8          In addition, Class Counsel were required to travel in connection with this case.  The

9   expenses in this category are reasonable in amount, and are properly charged against the fund

10  created.  *See Thornberry v. Delta Air Lines, Inc.*, 676 F.2d 1240, 1244 (9th Cir. 1982), *cert.*

11  *granted, judgment vacated*, 461 U.S. 952 (1983); *In re McDonnell Douglas Equip. Leasing Sec.*

12  *Litig.*, 842 F. Supp. 733, 746 (S.D.N.Y. 1994); *Genden v. Merrill Lynch, Pierce, Fenner &*

13  *Smith, Inc.*, 741 F. Supp. 84, 86 (S.D.N.Y. 1990).

14         Because these expenses were all necessarily incurred by Class Counsel in the course of

15  prosecuting this action, they should be paid from the Settlement Fund.

16  **VI.    THE COURT SHOULD APPROVE THE PAYMENT OF INCENTIVE**
            **AWARDS TO THE CLASS REPRESENTATIVES AS PROVIDED FOR IN**
17          **THE SETTLEMENT**

18         Incentive awards for class representatives promote the public policy of encouraging

19  individuals to undertake the responsibility of representative lawsuits.  The efforts of the Class

20  Representatives in this case – Desiree Stephenson, Marni Haber, and Karva Tam – were

21  instrumental in achieving the Settlement on behalf of the Class and justify the awards requested

22  here.  The Class Representatives came forward to prosecute this litigation for the benefit of the

23  Class as a whole.  These Class Representatives sought successfully to remedy a widespread

24  wrong and have conferred valuable benefits upon their fellow Class Members.  The Class

25  Representatives provided a valuable service to the Class by: (1) providing information and input

26  in connection with the drafting of the complaints; (2) overseeing the prosecution of the litigation;

27  (3) consulting with Class Counsel; and (4) offering advice and direction at critical junctures,

28  including the Settlement of the litigation.  A $1,000 incentive award for Plaintiff Stephenson and

1   $500 each for Plaintiffs Haber and Tam in recognition of their services to the Class is modest

2   under the circumstances, and well in line with awards approved by federal courts in California

3   and elsewhere.      *Barbosa v. Cargill Meat Solutions Corp.*, No. 1:11–cv–00275, 2013 WL

4   3340939 (E.D. Cal. July 2, 2013) ("'Courts routinely approve incentive awards to compensate

5   named plaintiffs for the services they provide and the risks they incurred during the course of the

6   class action litigation.'"); *see also McGee v. Continental Tire N. Am., Inc.*, Civ. No. 06-6234,

7   2009 WL 539893, at *18 (D.N.J. Mar. 4, 2009) (quoting *In re Lorazepam & Clorazepate*

8   *Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002)) ("Incentive awards are 'not uncommon in

9   class action litigation and particularly where ... a common fund has been created for the benefit

10  of the entire class.'"); *In re American Investors Life Ins. Co. Annuity Mktg. and Sales Practices*

11  *Litig.*, 263 F.R.D. 226, 245 (E.D. Pa. 2009) (awarding 10 representative plaintiffs incentive

12  payments in the amounts of $10,500 each and 2 representative plaintiffs $5,000 each, for a total

13  of $115,000, finding those amounts to be "reasonable compensation considering the extent of the

14  named plaintiffs' involvement and the sacrifice of their anonymity"); *Bezio v. Gen. Elec. Co.*,

15  655 F. Supp. 2d 162, 168 (N.D.N.Y. 2009) (incentive awards in the amount of $5,000 each are

16  "within the range of awards found acceptable for class representatives").

17      Accordingly, Class Counsel respectfully requests that the incentive awards provided for

18  in the Settlement Agreement be approved.

19  **VII.   CONCLUSION**

20      From the beginning, Plaintiffs and Class Counsel were faced with determined adversaries

21  represented by experienced, highly regarded counsel.   Without any assurance of success,

22  Plaintiffs and their counsel pursued this litigation to a successful conclusion.   Accordingly, we

23  respectfully submit that for the reasons set forth above and in the Declarations, the Court should

24  award Class Counsel's request for attorneys' fees and expenses of $500,000.  The Court should

25  also grant the requests of Class Representatives for incentive awards in the aggregate amount of

26  $2,000.

27

28

1    DATED: July 17, 2013                    Respectfully submitted,

2                                            LEXINGTON LAW GROUP

3

4                                            By:   /s/ Mark N. Todzo
                                                   Mark N. Todzo (State Bar No. 168389)
5                                                  Victoria Hartanto (State Bar No. 259833)
                                                   LEXINGTON LAW GROUP
6                                                  503 Divisadero Street
                                                   San Francisco, CA 94117-2212
7                                                  Telephone:  (415) 913-7800
                                                   Facsimile:  (415) 759-4112
8                                                  mtodzo@lexlawgroup.com
                                                   vhartanto@lexlawgroup.com
9

10                                                 Christopher M. Burke (State Bar No. 214799)
                                                   Hal D. Cunningham (State Bar No. 243048)
11                                                 SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
                                                   707 Broadway, Suite 1000
12                                                 San Diego, CA 92101
                                                   Telephone: (619) 233-4565
13                                                 Facsimile: (619) 233-0508
                                                   cburke@scott-scott.com
14                                                 hcunningham@scott-scott.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF COSTS AND EXPENSES - No. C 12-00426 PJH                    - 19 -